UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 18-25225-CIV-MORENO**

D.B.C. CORPORATION,

    Plaintiff,

vs.

NUCITA VENEZOLANA, C.A., a
Venezuelan company, SINDONI GROUP
SRL, a corporation of the Dominican Republic,
TRT OVERSEAS, LLC, a limited liability
company of the State of Florida, JET SEA
EQUITY CORP., a corporation of the British
Virgin Islands, and ECO BRANDS, LLC,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS AND DISMISSING AMENDED COMPLAINT WITHOUT PREJUDICE

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss (**D.E. 23**), which was restored onto the docket following a stay. THE COURT has considered the motion, the response in opposition, the reply, the pertinent portions of the record, and being otherwise fully advised in the premises, it is **ADJUDGED** that, for the reasons described below, the motion to dismiss is GRANTED, and the amended complaint is DISMISSED WITHOUT PREJUDICE.

### I. BACKGROUND

By way of background, Plaintiff D.B.C. Corporation owns and operates a bakery that produces, among other treats, a highly successful rolled wafer cookie distinguished by its contrasting-color swirl. Plaintiff has sold and distributed this cookie in the United States under the trademark "PIROULINE" as well as other variations of that trademark for almost forty years. "Since at least 1981, Plaintiff, through its predecessors in interest, has extensively and

continuously used, advertised, and promoted its confectionary products under the **PIROULINE** family of marks."[1]  Plaintiff recounts that in that time, its business "has grown from a startup to one of the best-recognized and most successful providers of cookie products in the United States."

On February 28, 2019, Plaintiff filed an amended complaint against the various Defendants alleging eight causes of action: (1) trademark infringement under 15 U.S.C. § 1114(1); (2) false designation of origin under 15 U.S.C. § 1125(a); (3) false advertising under 15 U.S.C. § 1125(a)(1)(B); (4) Florida common law unfair competition; (5) Florida common law unfair competition for false advertising; (6) declaration that "SPIROLINO" should not register with the United States Patent and Trademark Office ("PTO"); (7) declaration that "SPIROCREAM" should not register with the PTO; and (8) declaration that the two "PIRUCREME [sic]" registrations be cancelled by the PTO.  In light of a settlement agreement, the Court has since dismissed all claims against Defendant TRT Overseas, LLC.[2]  Moreover, following a separate acceptance of judgment, the Court entered judgment with respect to the third claim for false advertising against Defendants Nucita Venezolana, C.A., Sindoni Group SRL, and Jet Sea Equity Corp.

Consistent with the claims above, the gist of Plaintiff's amended complaint is that the Defendants, who sell goods that compete with Plaintiff's cookies, "are infringing its most valuable trademarks and trade dress as part of a continuous pattern to enter the United States market by directly trading on Plaintiff's well-established reputation and goodwill."  Plaintiff alleges that the Defendants are wrongfully marketing and selling "PIRULIN" and "PIRUCREAM" cookies in the

---

[1] According to the Plaintiff, the PIROULINE brand "is a family of trademarks comprising or containing the term **PIROU**—which is pronounced **PIRO**—coupled with other recognizable words or suffixes.   These marks include **PIROULINE**, **CRÈME DE PIROULINE**, **PIROULUXE**, and **PIROUCRISP**, among others."

[2] Thus, four Defendants remain in this case: Nucita Venezolana, C.A., Sindoni Group SRL, Jet Sea Equity Corp., and Eco Brands, LLC.

United States. Plaintiff recounts that it has already successfully opposed Nucita's application to register the PIRULIN mark on the basis that the mark was confusingly similar to its PIROULINE family of trademarks. As for the two PIRUCREAM marks, Plaintiff avers that Nucita transferred ownership of those marks to Jet Sea, and that proceedings to cancel those registrations are pending before the Trademark Trial and Appeal Board. Plaintiff also takes issue with Nucita attempting to register the SPIROLINO and SPIROCREAM marks, which Plaintiff claims also bear a confusing similarity to its PIROULINE family of marks. Plaintiff notes that with respect to the SPIROLINO mark (but not SPIROCREAM mark), opposition proceedings are pending before the PTO.

In response, the Defendants filed a motion to dismiss, arguing that all of Plaintiff's claims are insufficiently pled and that the amended complaint should be dismissed for being a shotgun pleading. "Rule 8 [of the Federal Rules of Civil Procedure] requires that a complaint provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." They also contend, with respect to counts six and seven, that the Court lacks jurisdiction to direct the PTO to deny a pending trademark application, and, with respect to count eight, that the Court lacks jurisdiction to cancel an already-registered trademark upon dismissal of the rest of the claims.

The Court now addresses the motion to dismiss, response, and reply.

## II. MOTION TO DISMISS STANDARD

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on such a motion, a court must view the complaint in a light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See Twombly*, 550 U.S. at 555-56. In order to establish a facially plausible claim, a plaintiff must show "more than a sheer possibility that a

defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  The plaintiff need not provide "detailed factual allegations," but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

As for a motion to dismiss under Rule 12(b)(1), attacks on subject matter jurisdiction come in two forms: "facial" and "factual" attacks.  *See Morrison v. Amway*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).  Relevant here, "facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Id.*  "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

### III. ANALYSIS

#### A. The Amended Complaint Is a Shotgun Pleading

Even viewing the amended complaint in a light most favorable to the Plaintiff, the Court finds that it comprises a shotgun pleading.  There are a few reasons why.  First, Plaintiff adopts a number of allegations in each count—incorporating paragraphs one through sixty-two (of the background section of the amended complaint) in counts one through five, paragraphs one through eighty-three in counts six and seven, and paragraphs one through seventy-two in count eight.  Such mere referencing of a multitude of allegations makes it difficult for the many Defendants (and Court) to ascertain what, exactly, their specific alleged misconduct entails.  "The most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that

Case 1:18-cv-25225-FAM   Document 54   Entered on FLSD Docket 06/02/2020   Page 5 of 14

came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). *See also Keith v. DeKalb Cty.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014) ("The complaint, through its incorporation into successive counts all preceding allegations and counts, is a quintessential 'shotgun' pleading . . . ."). Here, while each count does not technically adopt every allegation that came before it, the Court must still "sift out the irrelevancies, a task that can be quite onerous"—and one the Court declines to undertake given the numerosity of allegations. *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).

Second, Plaintiff asserts counts one through five against the Defendants collectively, making it once again difficult, if not impossible, for the many Defendants (and again, Court) to know what, exactly, their culpable conduct entails. This indiscriminate approach to pleading thus comprises "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323. By way of example, in counts three and five, which are claims for false advertising, Plaintiff alleges that the "Defendants" have posted and used a photograph of Plaintiff's products on social media, including Facebook, to advertise "Defendants' products." Plaintiff, however, does not identify who among the various Defendants is responsible for the allegedly deceptive advertisements, and fails to provide any more detail on what other social media platforms were allegedly used by the Defendants.

The same is true with respect to the first count of trademark infringement. Plaintiff claims that "Defendants have adopted and used in commerce confusingly similar infringing marks including **PIRUCREAM** and **PIRULIN**"—without specifying the identity of the "Defendants." This is made more confusing given that, elsewhere in the amended complaint, Plaintiff writes that

5

only a single "Defendant continues to market the infringing **PIRULIN** and **PIRUCREAM** products in the United States." By lumping the Defendants together—and then inexplicably singling one out—Plaintiff "fail[s] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. *See also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997) (describing a "prototypical 'shotgun complaint'" as one that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants").

### B. Plaintiff Fails to State a Claim for Trademark Infringement in Count One

Perhaps due in part to the amended complaint being a shotgun pleading, count one also fails to sufficiently state a claim for trademark infringement under section 43(a) of the Lanham Act. That section prohibits any person from the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Consistent with section 43(a), in order to make a claim of trademark infringement, "a plaintiff must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1130-31 (11th Cir. 2018) (quoting *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010)).

In count one, Plaintiff states that "Defendants have adopted and used in commerce, confusingly similar infringing marks including **PIRUCREAM** and **PIRULIN**," and that, as a result, "Defendants' use of the infringing marks is likely to cause confusion, mistake or to deceive the public as to source of Defendants' goods and services."  But Plaintiff provides no other information as to how, exactly, the Defendants have used the infringing marks in commerce.  These threadbare assertions are problematic given that "[t]he first step of a trademark infringement action is to demonstrate an unauthorized 'use' of the plaintiff's mark in commerce." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1242 (11th Cir. 2007) (quoting *Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983)).  They are also problematic upon considering the possibility that each Defendant is indeed responsible for trademark infringement. It is difficult to surmise how, for instance, Sindoni is liable—an entity whose only role, according to the Plaintiff, was "manufactur[ing] and commercializ[ing] the **PIRUCREAM** product *internationally*." *See* 15 U.S.C. § 1127 (emphasis added) (stating that the Lanham Act applies only to "all commerce which may be lawfully regulated by Congress"); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 984 (11th Cir. 1995) (similar).

Accordingly, given their lack of detail, Plaintiff's assertions in count one are conclusory. *See Felix the Cat Prods., Inc. v. Cal. Clock Co.*, No. 04 Civ. 5714 DAB, 2007 WL 1032267, at *4 (S.D.N.Y. Mar. 30, 2007) ("The mere assertion of trademark infringement, without any factual allegations of the nature of the infringement, simply does not give Defendants fair notice of the claims against them."); *see also Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2d Cir. 2006) (finding trademark claims "fail[ed] even the liberal standard of Rule 12(b)(6)" where they "consist[ed] of conclusory allegations unsupported by factual assertions" and thus "d[id] not give the defendants fair notice of the claims against them and d[id] not show, by facts

alleged, that [plaintiff] [wa]s entitled to relief" (internal quotation marks and citations omitted)).

### C. Plaintiff Fails to State a Claim for False Designation of Origin and Florida Common Law Unfair Competition in Counts Two and Four

In addition to being impermissibly pled and containing conclusory allegations (like count one), claims two and four fail to state a claim. Plaintiff's second claim for false designation of origin, and fourth claim for Florida common law unfair competition, are premised on Defendants seeking to register and use the marks SPIROLINO and SPIROCREAM. But these marks, according to the Plaintiff, are not in use in the United States by either Nucita or Sindoni. Plaintiff writes that "Nucita made no use in the United States of the mark SPIROLINO prior to October 1, 2016, and has made no such use to date," and elsewhere, that Nucita has only a "*bona fide* intent to use" the infringing marks. As for Sindoni, Plaintiff writes that "Sindoni intends to manufacture and commercialize the SPIROLINO and SPIROCREAM products, including in the United States."

To properly state a claim for false designation of origin under section 43(a) of the Lanham Act, any infringing "word, term, name, symbol, or device, or any combination thereof" must, among other things, be "use[d] in commerce." 15 U.S.C. § 1125(a)(1). The statute specifically defines the phrase "use[d] in commerce" as meaning "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. The Eleventh Circuit, interpreting section 43(a), also recognizes the requirement of actual use in commerce, explaining that a plaintiff seeking to make a false designation of origin claim must show "(1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it 'such that consumers were likely to confuse the two.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647-48 (11th Cir. 2007) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997)).

Hence, by conceding that the Defendants have not yet begun to use the allegedly infringing

8

unregistered marks—and instead only intend to use them—Plaintiff has failed to state a claim for false designation of origin. *See DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 936 (8th Cir. 2002) (noting that claims of trademark infringement and false designation of origin require "as a prerequisite to finding liability, that the defendant 'use in commerce' the protected mark or a colorable imitation thereof."); *Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002) (making clear that the "key question" in a claim for false designation of origin "is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties" (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997))); *Learning Experience Sys., LLC v. Foxborough Child Care, LLC*, No. 10-80561, 2010 WL 3565712, at *6 (S.D. Fla. Aug. 19, 2010), *report and recommendation adopted*, No. 10-80561, 2010 WL 3565708 (S.D. Fla. Sept. 9, 2010) (dismissing trademark infringement claim because, "as noted by Defendants, and as acknowledged by Plaintiff at the evidentiary hearing, Defendants have not used Plaintiff's mark").

Count four is likewise dismissed because it too is premised on the alleged use of the infringing marks in commerce. Plaintiff seeks damages in that count as "Defendants are using, within the State of Florida, confusingly similar names, brands and symbols." But, like for count two, the Plaintiff has already elsewhere conceded that the Defendants have not yet begun to use the infringing marks in commerce. *See Bird*, 289 F.3d at 877 ("[A] claim of unfair competition, unlike a claim of trademark infringement, does not require that a defendant use the plaintiff's trademark. Bird's allegations, however, relate to the defendants' alleged use of his trademark, rather than any other actions that might have misled the public. In the present case, therefore, Bird's claims of trademark infringement and unfair competition fail unless the defendants actually used Bird's trademark in a prohibited manner."); *see also Suntree Techs., Inc. v. Ecosense Int'l,*

*Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition." (quoting *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001))).

### D. The Court Dismisses Counts Six and Seven—as Pled—for Lack of Jurisdiction

The Court next dismisses counts six and seven for lack of subject matter jurisdiction. In those counts, Plaintiff seeks a declaratory judgment directing the PTO to cancel Nucita's pending trademark applications for SPIROLINO (application number 87/190,458) and SPIROCREAM (application number 87/199,942). Plaintiff asks that the Court, "by writ of mandamus, or other appropriate order," direct the PTO "to immediately refuse to register and abandon same." Plaintiff contends that this Court has jurisdiction under two statutes, 15 U.S.C. §§ 1119 and 1063, and concludes by writing that "[t]he declaration[s] of the court [are] necessary in order to rectify the register with respect to the registrations of a party to this action."

Defendants move to dismiss these counts for lack of jurisdiction under Rule 12(b)(1). While they concede that section 1119 may provide the Court with the ability in certain scenarios to direct the PTO to cancel an application, "the only marks Plaintiff has alleged that Defendants have actually used in commerce are the PIRULIN and PIRUCREAM marks, which—even if infringement is established—does not warrant declarations for SPIROLINO and SPIROCREAM not to register as they are entirely different marks." Defendants elaborate on why the marks are entirely different: "SPIROLINO and SPIROCREAM are too distinct—in sound, look and meaning—from PIRUCREAM or any of Plaintiff's registered marks for this Court's decision regarding PIRUCREAM to have any bearing on the PTO's decision to reject SPIROLINO or SPIROCREAM." As for this Court's authority under section 1063, Defendants argue the statute is irrelevant as it calls for the filing of opposition proceedings before the PTO, not federal courts.

After review, the Court mostly agrees with the Defendants and dismisses counts six and seven for lack of jurisdiction. To begin, "district courts shall have original jurisdiction of any civil action arising under any act of Congress relating to . . . trademarks." 28 U.S.C. § 1338 (a). But, this seemingly broad decree of authority has its limits. Notably, under section 37 of the Lanham Act (titled, "Power of court over registration"), a federal court can only determine the registrability of a trademark application in an action involving "a registered mark." 15 U.S.C. § 1119. The section states, in relevant part: "In any action involving *a registered mark* the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. *Id.* (emphasis added). Another section defines "registered mark" to mean "a mark registered in the United States Patent and Trademark Office under this chapter." 15 U.S.C. § 1127.

Interpreting section 1119, courts nationwide have generally held that they cannot preempt the PTO and cancel a trademark application, as doing so infringes upon the PTO's primary authority to adjudicate such applications in the first instance. *See, e.g.*, *Zany Toys, LLC v. Pearl Enters., LLC*, No. CIV.A. 13-5262, 2015 WL 404644, at *5 (D.N.J. Jan. 28, 2015) ("[U]nder the clear language of the Lanham Act, no claim arises under either §§ 1119 or 1120 until the relevant party has acquired a trademark, not merely when a trademark application is filed."); *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 241 (S.D.N.Y. 2000) ("Idea Nuova cites no authority for the proposition that § 37 permits a district court to cancel a pending trademark application."); *Johnny Blastoff Inc. v. L.A. Rams Football Co.*, No. 97-C-155-C, 1998 WL 766703, at *1 (W.D. Wis. June 24, 1998), *aff'd*, 188 F.3d 427 (7th Cir. 1999) ("Because the PTO has yet to rule on the parties' competing federal applications for registration of the 'St. Louis Rams' mark, this court is without authority to direct that body to grant or deny the pending applications.").

Still, some of those same courts recognize that an exception exists; namely, if the trademark applications share a sufficient nexus with the registered trademarks at issue in the underlying lawsuit. In *Continental Connector Corp. v. Continental Specialties Corp.*, 413 F. Supp. 1347 (D. Conn. 1976), the court analyzed section 1119 and concluded that "[b]y giving a court authority to rectify the register with respect to the 'registrations' of any party, the statute appears to permit rulings on marks other than the one on which a particular claim is founded." *Id.* at 1349. The court limited its holding to unregistered marks that shared a sufficient nexus with the registered trademarks at issue, such that resolution of the unregistered marks "involved many of the same facts involved in plaintiff's federal and common law claims." *Id.* at 1351.

Various other courts, and a leading treatise on the matter, recognize this sufficient nexus exception. *See Zany Toys, LLC*, 2015 WL 404644, at *6-7 (considering the possibility that a court would have jurisdiction to handle trademark applications as long as a close nexus existed between them and the registered marks at issue); *Johnny Blastoff Inc.*, 1998 WL 766703, at *12 ("In virtually every case in which a federal court has found authorization to determine the initial registrability of a mark under Section 1119, that registrability determination was tied directly to a challenge to an existing competing registration or a claim of infringement based on an existing registration."); 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:113.50 (5th ed.) ("While some decisions permit a federal court to determine the registrability of an as-yet-unregistered mark in a lawsuit in which a different registered mark is involved, that is permitted only when there is a close nexus between the issues in the pending application proceeding and those in the federal court dispute involving the registered mark.").

Analyzing section 1119, this Court agrees with *Continental Connector Corp.* and its progeny, and finds that it may exercise authority over a trademark application as long as that

application is sufficiently similar (such as in sound, look, and meaning) to the registered trademark at issue in the underlying litigation. But here, the Court's analysis need not go any further. Turning to counts six and seven of the amended complaint, the Court once again encounters a similar hurdle: Plaintiff has failed to state a claim since it eschews any analysis as to how the allegedly infringing SPIROLONO and SPIROCREAM marks share a sufficient nexus with its PIROULINE family of trademarks. All Plaintiff notes is that the instant dispute involves registered marks. Accordingly, counts six and seven—as pled—are dismissed on their face for lack of jurisdiction.

As for Plaintiff's remaining argument that this Court has jurisdiction under section 1063 to resolve Defendants' trademark applications, that argument is misplaced. That statute, if anything, stands for the opposite proposition for which it is cited: that this Court cannot entertain Plaintiff's challenges to the trademark applications. Section 1063 only provides a person who may be damaged by a trademark registration the ability to "file an opposition in the [PTO]"—making no mention of any role by federal courts in the application process. 15 U.S.C. § 1063(a).

### E. The Court Also Dismisses Count Eight for Lack of Jurisdiction

Lastly, the Court dismisses count eight for lack of jurisdiction. In that count, Plaintiff seeks a declaratory judgment "that Defendant Jet Sea's PIRUCREME [sic] registrations be cancelled from the Federal Register." But, having already dismissed the other claims in the amended complaint, the Court finds that this one cannot stand on its own. As previously noted, the key language of section 1119 specifies that the cancellation of a trademark application may only be sought if there is already an ongoing action that involves a "registered mark"—the statute does not allow a cancellation claim as an independent cause of action. 15 U.S.C. § 1119. *See also Nike, Inc. v. Already, LLC*, 663 F.3d 89, 98 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013) ("The limiting phrase '[i]n any action involving a registered mark' plainly narrows the circumstances in which

cancellation may be sought—namely, in connection with 'a properly instituted and otherwise jurisdictionally supportable action involving a registered mark.'" (alteration in original) (quoting *Universal Sewing Mach. Co. v. Standard Sewing Equip. Corp.*, 185 F. Supp. 257, 260 (S.D.N.Y. 1960))); *Windsurfing Int'l Inc. v. AMF Inc.*, 828 F.2d 755, 758-759 (Fed. Cir. 1987) (analyzing section 1119 and opining that "[t]here must . . . be something beyond the mere competitor status of the parties to serve as a basis for the court's jurisdiction.  Such a basis may, for example, be a suit for trademark infringement . . . ." (citation omitted)).

### IV. CONCLUSION

Based on the foregoing reasons, Defendants' motion to dismiss is GRANTED and the amended complaint is DISMISSED WITHOUT PREJUDICE.  Plaintiff's claims are insufficiently pled, and the amended complaint, by and large, is a shotgun pleading.  Furthermore, at this juncture, the Court does not have jurisdiction to adjudicate claims six through eight.

Consistent with this Order, Plaintiff shall file a second amended complaint by no later than **Wednesday, June 17, 2020**.  Failure to file an amended pleading by this date may result in dismissal of the action.  The Defendants shall file a response no later than fourteen days upon receipt of the second amended complaint.  *See* FED. R. CIV. P. 15(a)(3).

DONE AND ORDERED in Chambers at Miami, Florida, this 2nd of June 2020.

*Federico A. Moreno*

———————————————
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record