UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Case Number: 18-25225-CIV-MORENO

D.B.C. CORPORATION,

    Plaintiff,

vs.

NUCITA VENEZOLANA, C.A., a
Venezuelan company, SINDONI GROUP
SRL, a corporation of the Dominican Republic,
TRT OVERSEAS, LLC, a limited liability
company of the State of Florida, JET SEA
EQUITY CORP., a corporation of the British
Virgin Islands, and ECO BRANDS, LLC,

    Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION TO STAY AND TO ENFORCE SETTLEMENT AGREEMENT

THIS CAUSE came before the Court upon Plaintiff's Motion to Stay and to Enforce Settlement Agreement **(D.E. 57)**, filed on **June 5, 2020**. THE COURT has considered the motion and record. For the reasons detailed below, it is **ADJUDGED** that Plaintiff's motion is **DENIED**.

### A. Background

In its motion to stay, Plaintiff D.B.C. Corporation seeks a stay to enforce the terms of the settlement agreement that has been allegedly agreed to by the parties. Plaintiff contends that on April 29 and April 30, 2020, the parties settled the case by e-mail correspondence. Its argument is two-fold: first, Defendants explicitly agreed by e-mail to the material terms of the settlement agreement, which was e-mailed to Defendants before they accepted the offer. Specifically, Plaintiff's counsel sent an e-mail to Defendants' counsel noting that an agreement had been reached. Defendants' counsel then wrote back and confirmed, that same day, stating "[y]es, provided the final agreement reflects our final understanding we should have a deal in place." Second and relatedly, Plaintiff argues an agreement had been reached because, upon receiving the

settlement agreement (and agreeing to it), Defendants never, in the days that followed, disavowed it, thereby manifesting by their silence an acceptance of the final formal settlement agreement.

### B. Analysis

Plaintiff's arguments are unavailing. As a preliminary matter, this Court possesses the inherent authority to summarily enforce a settlement agreement. *Ford v. Citizens & S. Nat'l Bank*, 928 F.2d 1118, 1121 (11th Cir. 1991). "[I]n determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). Applying Florida law, the party seeking to enforce a settlement agreement bears the burden of proving, by a preponderance of the evidence, that the opposing party assented to the terms of the agreement. *Carroll v. Carroll*, 532 So. 2d 1109, 1109 (Fla. 4th DCA 1988); *see also Welch v. N. Am. Tank Line, Inc.*, No. 8:06-CIV-2340-T-17-MAP, 2008 WL 3982394, at *2 (M.D. Fla. Aug. 25, 2008) (applying preponderance standard in accordance with Florida law).

Florida law is clear that a settlement can be reached through a series of e-mail exchanges. *Warrior Creek Dev., Inc. v. Cummings,* 56 So. 3d 915, 917 (Fla. 2d DCA 2011). In reviewing those exchanges, Florida courts apply an "objective test" in deciding whether an enforceable contract exists. *Perez-Perez v. Vasquez*, No. 16-CIV-14002, 2019 WL 5291097, at *2 (S.D. Fla. June 13, 2019), *report and recommendation adopted*, No. 16-14002-CIV, 2019 WL 5290909 (S.D. Fla. July 12, 2019). Under this objective test, it matters not whether there was "the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing." *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). In other words, "[t]he creation of a contract requires that there be mutual assent to a certain and definite proposition." *ABC Liquors, Inc. v. Centimark Corp.*, 967 So. 2d 1053, 1056 (Fla. 5th DCA 2007). If a purported agreement leaves open its

essential terms for future negotiation, or merely constitutes an agreement to agree, then there is no enforceable contract.  *WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*, No. 8:07-cv-2093, 2009 WL 2473686, at *4 (M.D. Fla. Aug. 11, 2009); *ABC Liquors*, 967 So. 2d at 1056.

Reviewing the e-mails accompanying the motion to stay, the communications between the parties do not establish, by a preponderance of the evidence, that there was mutual assent to the material terms of the settlement agreement.  While Defendants' counsel no doubt made a series of representations suggesting his clients' willingness to enter into a settlement agreement, those wishes and sentiments did not rise to an actual acceptance of the material terms of the settlement agreement.  The e-mails are missing the basic premise of any kind of agreement—acceptance by the offeree—and comprise nothing more than "an agreement to agree."  *ABC Liquors*, 967 So. 2d at 1056.  For instance, on April 29, Defendants' counsel wrote, "I spoke with my client and I think we have a deal"— suggesting acceptance—but then immediately wrote in the following sentence, "[p]lease send me the final draft so I can review it one last time before my client signs"— suggesting that that acceptance was contingent upon final review by his clients (and thus, constituted an agreement to agree).  And while Defendants' counsel would write, one day later, "Yes," in response to Plaintiff's counsel stating that the parties had reached an agreement in principle, immediately following that alleged acceptance was the following contingency: "provided the final agreement reflects our final understanding we should have a deal in place."

In making its argument, Plaintiff mainly relies on *Vita Nuova Foods, Inc. v. Vita Nuova Products, Inc*., No. 08-22185, 2009 WL 10666847 (S.D. Fla. Apr. 15, 2009), a trademark infringement and unfair competition case similar to the instant one.  *Id.* at *1.  But that case is distinguishable.  There, the district court found that a settlement agreement had been reached because "there was a meeting of the minds or mutual or reciprocal assent to certain definite propositions."  *Id.* at *3 (quoting *Ribich v. Evergreen Sales & Servs., Inc.*, 784 So. 2d 1201, 1202

3

(Fla. 2d DCA 2001)). Specifically, the court found that there had been a verbal agreement to settle the case: "The evidence shows that . . . Harris [defendants' counsel] sent Frank [plaintiff's counsel] an e-mail containing Defendants' counteroffer of $35,000 to settle the lawsuit; Frank thereafter called Harris to accept the counteroffer on behalf of Plaintiffs." *Id.* at *4.

Thus, a crucial difference between this case and *Vita Nuova* is that in the latter, there was a verbal agreement, whereas here, Plaintiff all but concedes that the extent of the parties' interactions is e-mail. In its motion to stay, it details that "[p]rior to filing this action, the parties engaged in settlement discussions, which, although at times made progress towards resolving the dispute, were never reduced to agreed material terms as they were in this case on April 29, 2020." Furthermore, in *Vita Nuova*, "Frank testified that Harris never indicated that his acceptance was contingent in any way" when accepting the counteroffer. *Vita Nuova*, 2009 WL 10666847, at *4. As explained above, any near assent by Defendants' counsel in the e-mails was accompanied by contingent language—demonstrating that only an agreement to agree had been reached.

*Miles v. Northwestern Mutual Life Insurance Co.*, 677 F. Supp. 2d 1312 (M.D. Fla. 2009), is instructive. In that case, the district court found that an agreement to settle the case had been reached, but only because the parties "said the same thing" in their e-mails regarding all the essential elements of the agreement. *Id.* at 1315 (quoting *Robbie*, 469 So. 2d at 1385). The court explained that first, "[n]either party disputes that they agreed to resolve their claims," and second, there was an e-mail demonstrating clear acceptance of the settlement agreement. *Id.* In that e-mail, the court found that "Walker's [plaintiff's counsel] response stating that 'Dr. Miles accepts your client's offer as set forth [in the e-mail]' was an absolute and unconditional acceptance of the offer." *Id.* (second alteration in original). Here, conversely, the parties do not agree that they have resolved their claims, and no such e-mail was ever sent to that effect. *Cf. Perez-Perez*, 2019 WL 5291097, at *2 (finding a settlement agreement reached because "the e-mail communications

4

between the parties, coupled with the notice of settlement filed on behalf of both parties, demonstrate that both parties intended to be bound by the settlement agreement."); *Warrior Creek Dev., Inc.*, 56 So. 3d at 916 ("The essential and material terms of the settlement were set forth in a detailed e-mail sent by Mr. Cummings' attorney to Warrior Creek and Mr. Knight's attorney on November 11, 2008. Their attorney agreed to the terms contained in the e-mail.").

Plaintiff also argues that Defendants' silence upon receiving the terms of the settlement agreement manifested assent. It emphasizes that "[a]t no point on April 29, April 30, May 5, May 15, or May 19, 2020, did Defendants claim that there had not already been a meeting of the minds as to the material terms of the agreement." But the reality is that Defendants' counsel did not need to negate the assertion, as he made clear in several e-mails that acceptance of the agreement was contingent upon his clients' final review, telling Plaintiff's counsel as early as April 29 to "[p]lease send me the final draft so I can review it one last time before my client signs."

While the Court recognizes that often times it may be a mere formality for the parties to execute a final settlement agreement, *see Vital Pharm., Inc. v. S.A.N. Nutrition Corp.*, No. 06-60646, 2007 WL 1655421, at *6 (S.D. Fla. June 6, 2007); *Boyko v. Ilardi*, 613 So. 2d 103, 104 (Fla. 3d DCA 1993), in this case, execution of the final agreement became a condition precedent to the formation of a binding agreement. It became so when Defendants' counsel conditioned acceptance upon further discussion with his clients. Under Florida law, a final written agreement may, like here, be a condition precedent to a binding contract. *See Miles*, 677 F. Supp. 2d at 1316 ("Where the parties intend that there will be no binding contract until the negotiations are reduced to a formal writing, there is no contract until that time." (quoting *Club Eden Roc, Inc. v. Tripmasters, Inc.*, 471 So. 2d 1322, 1324 (Fla. 3d DCA 1985))); *Long Term Mgmt., Inc. v. Univ. Nursing Care Ctr., Inc.*, 704 So. 2d 669, 674 (Fla. 1st DCA 1997) (finding that the parties did not intend for an agreement to be binding until it was reduced to writing and executed by the parties,

based on counsel's comments in court that the settlement was "subject to [being written] down").

As a final note, the Court sees no reason to hold an evidentiary hearing to adjudicate the present dispute. "A number of courts have recognized the authority of a trial court to summarily enforce a settlement agreement without an evidentiary hearing." *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994). Normally, evidentiary hearings are called for "[w]here material facts concerning the *existence* or *terms* of an agreement to settle are in dispute." *Id.* Here, however, neither the existence or terms of the settlement agreement are in dispute. Instead, as the foregoing analysis demonstrates, the parties never, in the first instance, entered into a settlement agreement. Any hearing would also be pointless as it is clear from Plaintiff's motion that the only evidence it relies on in making its arguments is the e-mail correspondence. Unlike in *Vita Nuova*, where there was a verbal agreement, Plaintiff states there was none in this case.

### C. Conclusion

Accordingly, because the Plaintiff fails to introduce sufficient evidence demonstrating that a final enforceable settlement agreement was reached in this matter, it is **ADJUDGED** that Plaintiff's Motion to Stay and to Enforce Settlement Agreement is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 15th of June 2020.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record